983 F.2d 1065
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Anthony BRUNO, Jr., Plaintiff-Appellant,
v.
UNITED STEELWORKERS OF AMERICA and Amweld Building Products,
Inc., Defendants-Appellees.
 No. 92-3342.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1993.
 
 Before BOGGS and DAVID A. NELSON, Circuit Judges, and ROSENN, Senior Circuit Judge.[1]
 PER CURIAM.
 
 
 1
 Anthony Bruno appeals from a district court's order granting summary judgment for the defendants and dismissing his case. Bruno contends that material issues of fact exist, and that appellee Amweld violated ERISA as a matter of law. For the reasons stated, we affirm the judgment of the district court.
 
 
 2
 * In order to comply with federal safety requirements, appellee Amweld Business Products implemented a worker training program. Pursuant to this program, the company instructed workers to watch a safety film. On January 26, 1990, appellant Bruno, an employee for over 20 years, told his supervisor that he already had seen the film. When his supervisors discovered that Bruno had not seen the film, they ordered him to attend. Bruno did not go. Production superintendent Tom Brest then confronted Bruno and told him that he had a duty to attend. An altercation ensued between the two men which culminated in Bruno calling Brest a "fascist," "Hitler," and a "communist."[2]
 
 
 3
 Upon further urging, Bruno chose to attend a showing of the film on January 29. However, he sat with his back to the projector, engaged in disruptive conversation, and did not sign the attendance sheet. Based upon these actions, on February 2, the company suspended the plaintiff for five days and stated its intent to discharge him in the future. The United Steelworkers Union ("Union") represented plaintiff at suspension hearings held on February 9 and February 13. At the February 13 hearing, the company told plaintiff that they had just cause for discharging him, but they would reinstate him if he would agree to certain terms. These terms were a suspension without back pay, an acknowledgment by Bruno that his behavior was unacceptable, and a promise not to file a grievance. Plaintiff refused the offer, stating that he had done nothing wrong.
 
 
 4
 Plaintiff then filed grievance number AWN-7-90 on February 15, 1990. The grievance protested the five-day suspension. Pursuant to the grievance process, a "step three" meeting[3] was held on February 23. Union Representative Willie Hall attended the meeting for appellant. The parties fully discussed the incidents in question. The company denied any wrongdoing, and advised plaintiff by letter on February 28 that if he did not return to work within seven days based upon the company's first offer of reinstatement, they would terminate his employment.
 
 
 5
 Plaintiff responded by refusing to return to work and by filing another grievance on March 12 (No. AWN-17-90). On March 14, the company terminated him for "refusal to return to work per the Company's letter of February 28, 1990 and your previous disciplinary record." Plaintiff then filed a third grievance, protesting his discharge and arguing that the company failed to handle timely the original grievance. The parties held a step three meeting on March 29, 1990 regarding the last two grievances. Following these discussions, the company offered plaintiff a "last chance to return to work" on the terms of the original reinstatement. Plaintiff did not return to work, and the company labelled his failure to return a "voluntary quit."
 
 
 6
 Plaintiff then obtained arbitration on his three grievances. The arbitrator considered all of the evidence and found that plaintiff had engaged in "insubordinate and disrespectful" action that insulted and undermined his superiors. The arbitrator found proper cause for discharge. However, based upon the plaintiff's many years of experience and service to the company, the arbitrator believed that reinstatement would be reasonable. Accordingly, he ordered Bruno's reinstatement, if he would accept certain conditions. These conditions were similar to those offered by the employer as early as February. The arbitrator also offered to retain custody of the dispute to work out any difficulties the parties might have in implementing an agreement. Appellant chose to commence this lawsuit rather than accept the conditions. Appellant argues that the Union breached its duty of fair representation, that Amweld violated ERISA, that the arbitrator was biased, and that his decision did not draw its essence from the collective bargaining agreement.
 
 
 7
 The district court found that no evidence existed that the Union breached its duty of fair representation. The court further found that the arbitrator acted within his authority, and there was no evidence of bias. The court then granted summary judgment for Amweld, finding that no violation of ERISA occurred. Appellant then brought this timely appeal.
 
 II
 
 8
 Appellant first argues that Amweld violated ERISA by not providing proper notice of discharge to the plan administrator. The Consolidated Omnibus Budget Reconciliation Act of 1986 (COBRA) contains an amendment to ERISA. Under COBRA, employers must give notice to a plan administrator of an employee's termination within 30 days of such action. 29 U.S.C. § 1166. Once an employer notifies the administrator, the administrator has 14 days to notify the employee of the right to a continuation of health coverage. 29 U.S.C. § 1167(3)(B). Bruno claims that he did not receive timely notice of his COBRA right to continued coverage. He therefore brought suit against Amweld.
 
 
 9
 Pam Mealy is the Personnel Administrator of Amweld and is responsible for notifying the plan administrator, UIU Health and Welfare Fund ("UIU") of employee terminations. On April 9, 1990, Nealy notified UIU that appellant "stopped work" on February 2, 1990. These facts are not in dispute. The dispute concerns when the company "terminated" Bruno. COBRA requires notification to the plan within 30 days of termination. In this case, although appellant asserts that the company terminated him on February 2, the evidence clearly establishes March 14 as the discharge date.
 
 
 10
 Amweld formally discharged Bruno on March 14. Prior to this time, it had only threatened to do so. The February 2 letter suspended the appellant for five days, with an intent to discharge in the future. Bruno himself alleges in his complaint that the company discharged him on March 14. Bruno also testified in his deposition that the company fired him on March 14, 1990. Because Amweld sent notice to the plan administrator on April 9, only 26 days after discharge, Amweld satisfied its obligation under COBRA.
 
 
 11
 Bruno argues that February 2 constitutes the qualifying discharge date under COBRA. Bruno relies upon the notice to UIU which stated that Bruno "stopped work" on February 2. This position is incorrect. COBRA quite clearly states that the qualifying event is when the company discharges the employee, not when the employee stops working. The fact that Amweld provided superfluous information to UIU, in this case the last day Bruno worked for the company, is immaterial. The company satisfied its responsibilities under the statute, and accordingly, summary judgment is proper on the ERISA claim.
 
 III
 
 12
 A union breaches its duty of fair representation when its conduct is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903 (1967). A union is afforded a wide range of reasonableness in representing its members. Shamblin v. General Motors Corp., 743 F.2d 436 (6th Cir.1984).
 
 
 13
 The Union represented appellant through every stage of the grievance process. The Union obtained for the appellant three offers of reinstatement without any loss of seniority. Despite these productive efforts, Bruno alleges a breach because the Union failed to object to time delays in the grievance process caused by Amweld. This position is incorrect. First, even if improper delays did occur, appellant does not assert any prejudice from the Union's failure to object. Delays that do not cause prejudice and for which appellant cannot prove any discriminatory intent, are not actionable. Agate v. General Motors Corp, 121 LRRM 2307 (W.D.Mich.1985). Moreover, a rational explanation existed for the relaxing of the grievance schedule. The Union and the employer had in the past waived contractual time limits in administering the collective bargaining agreement. The Union and management were in negotiations attempting to resolve Bruno's claim. Union action that can be rationally explained does not violate a duty of fair representation. Perry v. Million Air, 943 F.2d 616, 619 (6th Cir.1990); Ruzicka v. General Motors Corp., 649 F.2d 1207, 1211 (6th Cir.1981). Moreover, the district court correctly found that appellant's deposition testimony does not support his allegation that the Union failed to protest any delays. Appellant concedes that the Union may have protested the delay, but that he just can't recall. (R.25). For these reasons, appellant's claim that the Union breached its duty of fair representation must be denied.
 
 
 14
 Appellant also asserts a breach of a duty of fair representation based upon the Union's decision not to provide non-union counsel for Bruno. This argument is meritless. Courts consistently have held, as the district court did, that a union does not breach its duty of fair representation if it refuses to provide non-union counsel in arbitration cases. Castelli v. Douglas Aircraft Co., 752 F.2d 1480 (9th Cir.1985); Grovner v. Georgia-Pacific Corp., 625 F.2d 1289 (5th Cir.1980); Allen v. Allied Plant Maintenance Co., 636 F.Supp. 1090 (M.D.Tenn.1986). Furthermore, Bruno had served as chairman of the local Union's grievance committee for a number of years, during which time he filed many grievances and was familiar with the grievance and arbitration procedure.
 
 
 15
 Appellant's remaining arguments on appeal focus on what he calls "numerous genuine issue of fact in dispute." These facts however, do not preclude summary judgment. Not every factual dispute between parties precludes summary judgment. Rather, only those facts material to the outcome preclude summary disposition. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432 (6th Cir.1987). In this case, none of appellant's disputed facts affect the outcome of the case. Appellant alleges that the Union attorney failed to prepare witnesses adequately for the arbitration. This allegation is not true.[4] However, even if accurate, appellant has not shown why this fact precludes summary judgment. Similarly, appellant chastises the Union for not ordering a transcript of the arbitration proceedings. This fact, if true, also does not change the outcome of the case.
 
 
 16
 For all of the foregoing reasons, summary judgment is proper.
 
 IV
 
 17
 Finally, appellant asks that this court vacate the arbitrator's award. Notwithstanding the extreme deference shown to arbitrators, courts do have the authority to vacate an award tainted by bias. Apperson v. Fleet Carrier Corp., 879 F.2d 1344 (6th Cir.1989). The appellant argues that the arbitrator was biased because he attempted to "coerce" Bruno to agree to reinstatement, and because he met privately with Bruno prior to the arbitration, stating that it appeared to him that the company's case was "strong."
 
 
 18
 These facts do not adequately demonstrate bias. After reviewing the facts, the arbitrator believed that the employer had a strong case for discharge. Accordingly, during a type of settlement conference the arbitrator held with each side, he mentioned to Bruno that the defendants had a strong case, and that perhaps settlement would be beneficial. This recommendation does not support a finding of bias; it merely displays experience and prudence. In order to prove bias, appellant must show improper motives on the part of the arbitrator. Apperson, 879 F.2d at 1344 ("more than the appearance of bias is required."). Bruno has failed to make the required showing.
 
 
 19
 Bruno also argues that vacating the award is proper because the arbitrator failed to draw the essence of his award from the collective bargaining agreement. In a series of 1960 decisions known as the Steelworkers Trilogy, the Supreme Court recognized the pre-eminent role of arbitration in labor-management relations. Pursuant to these cases, a court must enforce an arbitrator's award so long as the award draws its essence from the collective bargaining agreement, even if the court disagrees with the arbitrator's interpretation of the contract. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358 (1960). More recently the Court stated that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court should not reverse. United Paperworkers International Union v. Misco, 484 U.S. 29, 108 S.Ct. 364 (1987).
 
 
 20
 Bruno makes two arguments that the award is not drawn from the bargaining agreement. First, he alleges that the arbitrator ignored the requirement that Amweld provide a suspension hearing. This contention is incorrect. The arbitrator relied upon Article X, § 2. Pursuant to this portion of the contract, the arbitrator held that Amweld did conduct a suspension hearing for Bruno. Accordingly, the arbitrator was interpreting the agreement.
 
 
 21
 Appellant also argues that the arbitrator failed to issue a final decision, but instead set forth a conditional award if the appellant would return to work. According to Bruno, an arbitrator cannot retain jurisdiction and place conditions on his award. First, this argument is ironic because Bruno benefited from the arbitrator's decision. The arbitrator found that just cause existed for discharge. However, because of the employee's long-standing service, the arbitrator gave him one last chance to retain his job. The arbitrator's fashioning of the award was proper. The arbitrator stated that if the appellant chose to accept his conditions, he would maintain jurisdiction to resolve any outstanding issues. If the appellant refused the offer, the ruling that discharge was proper would be final. This ruling constitutes a final judgment. Courts have previously held that an arbitrator's retention of jurisdiction is proper to resolve extraneous issues. See, e.g., Kohn Beverage Co. v. Teamsters Local 348, 117 LRRM 2529 (Ohio App.1983); Belo Corp. v. Typographical Union, 82 LRRM 2574 (N.D.Tex.1972). Therefore, we may not vacate the decision of the arbitrator.
 
 
 22
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The Honorable Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [2]
 Cf. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766 (1942)
 
 
 [3]
 The grievance process consists of four steps: the filing of the grievance; the company's response; the meeting between the parties; and, if the parties cannot resolve the issue, arbitration
 
 
 [4]
 The arbitrator found the union's witnesses so well-prepared that he was incredulous of their testimony