**D.E.I., INC., Plaintiff,**

v.

**OHIO AND VICINITY REGIONAL, Defendant.**

No. 3:03CV7434.

United States District Court, N.D. Ohio, Western Division.

Dec. 8, 2003.

Eric S. Clark, Thompson Hine, Keith P. Spiller, Thompson Hine, Stephen L. Richey, Thompson Hine, Cincinnati, OH, for D.E.I., Inc., Plaintiff.

Stephen A. Markus, Ulmer & Berne, Fred Seleman, Ulmer & Berne, Cleveland, OH, for Ohio and Vicinity Regional Council of Carpenters, Ohio and Vicinity Regional Council of Carpenters, Local 372, Defendants.

## ORDER

CARR, District Judge.

This is an action to vacate an arbitration award against the plaintiff, D.E.I., Inc., and in favor of the Ohio and Vicinity Regional Council of Carpenters and its Local 372 (collectively referred to herein as the Union). Pending are cross-motions for summary judgment on D.E.I.'s complaint. In addition, the union has filed a motion for summary judgment on its counterclaim.

For the reasons which follow, the Union's motions for summary judgment shall be granted.

### Background

D.E.I. Service, Inc. (later merged into the plaintiff D.E.I.) signed a contract with the Union on January 5, 1990. Because that contract contained an "Evergreen" provision whereby it automatically renewed itself unless or until terminated by either party, the Union asserted, following D.E.I. Services' merger with D.E.I., that D.E.I. was bound by the 1990 contract. D.E.I. disagreed, and litigation ensued. The parties settled that litigation, and D.E.I. signed a collective bargaining agreement with the Union.

During the negotiations leading to that settlement and the collective bargaining agreement between D.E.I. and the Union, D.E.I. sought to exclude from the agreement's coverage a project in for the Citizens National Bank in Van Wert, Ohio. The bank had engaged D.E.I. as its general contractor for that project. The Union refused to grant D.E.I.'s request to exclude that project from the collective bargaining agreement's coverage. Consequently, the collective bargaining agreement between the parties prevented D.E.I. from subcontracting any work on the Van Wert bank project to non-union carpenters.

The bank, desiring to use local contractors as a means of generating new customers, rescinded its general contractor's agreement with D.E.I. on November 18, 2002. Four days later, D.E.I. and the bank entered into a construction management agreement, whereby D.E.I., rather than serving as the general contractor, would function as a construction manager.

Pursuant to this agreement, the bank and not D.E.I. was to enter into any subcontracts. In addition, the management agreement made the bank responsible for many of the obligations that D.E.I. would have assumed had the general contractor's agreement remained in effect. The money due to D.E.I. remained, however, the same under the management agreement as it had been under the general contractor's agreement.

While work was underway on the project, the Union determined that non-union subcontractors were doing work that it believed should, under the collective bargaining agreement, have been performed by union subcontractors. It protested to D.E.I., which, in turn, informed the union that it was a construction manager, not a general contractor. Thus, D.E.I. asserted, the work was not covered by the collective bargaining agreement.

The Union filed a grievance, which was heard by an arbitration panel. In support of its contention that, as a construction manager, rather than a general contractor, the work it was performing was not covered by the collective bargaining agreement, D.E.I. relied on documents showing that it was to function, and was functioning as a construction manager.

The Union contended that the construction management agreement was a sham, D.E.I. was de facto serving as a general contractor, and subcontracting work had to be performed by union labor. In support of its contention that D.E.I. was acting as a general contractor, the Union pointed out that construction managers, who are obligated to perform less work and assume lesser responsibilities, are also paid less, in contrast to D.E.I., which was receiving the same compensation despite its putative change in status from general contractor to construction manager.

In addition, the Union also presented evidence that the same contractors who had worked for D.E.I. on other projects for which it was general contractor were working on the Van Wert project. One of those subcontractors admitted to a union representative that its bid had gone to D.E.I., rather than the bank. In addition, the Union submitted evidence that two other subcontractors had been subcontracted directly by D.E.I. The Union also offered an admission by D.E.I.'s project manager to another contractor that D.E.I. had "found a way to 'get around all of that Union stuff' ... by call[ing] themselves Construction Managers on the Van Wert Project."

D.E.I. also argued that the Union's grievance was not timely. The collective bargaining agreement provides that "No grievance shall be filed or processed on events which have occurred prior to seven (7) calendar days before the grievance is filed." (Doc. 13, Exh. A, at 5, ¶ 27). The Union's grievance bears two dates, February 19 and February 20, 2003.

D.E.I. presented evidence that the union was aware that non-union labor was doing carpentry work as of February 3, 2003, and that a union agent observed such work on February 5, 2003. The union, in response, stated that the February 3rd observation had not been by a union representative, and that on February 5th, immediately after its agent observed non-union workers at the project, it immediately complained to D.E.I. Thereafter, rather than filing a grievance, the Union sought to resolve its objections informally. These

efforts reached an impasse on February 11th.

The Union also presented evidence to the arbitrators that, notwithstanding the provision in the collective bargaining agreement requiring grievances to be filed within seven days, its grievance was timely because it had been filed within seven business days, as allowed by past practice between the parties.

The panel ruled in favor of the Union. Without an express statement of its reasons, the panel's report states that the panel's members "found D.E.I., Inc in violation of the Carpenters Collective Bargaining Agreement Article XI." The arbitrators' award directed that three carpenter contractors were to "look at the document plans and specifications to determine what the carpenters' man hours on the Van Wert project are." (Doc. 13, Exh. B, at 3). On that basis, damages were to be awarded.

D.E.I. filed this suit to vacate the arbitrators' award. The Union's counterclaim seeks enforcement of the award.

### Discussion

D.E.I. claims that the arbitrators' ruling: 1) conflicts with the express terms of the collective bargaining agreement, because it was a construction manager, not a general contractor; 2) disregards the well established distinction between a construction manager and general contractor; 3) is without rational support; and 4) improperly reflects the arbitrators' brand of "industrial justice." In addition, D.E.I. contends that the panel ignored the untimeliness of the Union's grievance. Thus, D.E.I. argues, the award cannot be upheld.

In the alternative, D.E.I. asserts that, if the award is not vacated, remand is necessary because the panel: 1) failed to set forth its rationale for its implicit finding that D.E.I. was acting as a general contractor, rather than as a construction manager; and 2) failed to consider D.E.I.'s claim that the grievance was untimely.

I find none of D.E.I.'s contentions persuasive. At the heart of this controversy are two factual issues: 1) was D.E.I. functioning as a construction manager or as a general contractor; and 2) did the Union's grievance cover the entire period during which work was performed that should have been performed by union carpenters, or was the period of D.E.I.'s exposure to damages limited due to untimeliness of the grievance.

The parties presented evidence as to both issues. D.E.I.'s evidence was entirely documentary. The union presented testimony, as outlined above, supporting its contentions about D.E.I.'s status and role and the custom and practice regarding the computation of the period within which grievances were to be filed.

The award, though it fails to say so expressly, undoubtedly manifests the panel's findings with regard to both of these basic factual disputes: namely, that, in light of the evidence, D.E.I. was acting, with regard to subcontracting arrangements, as a general contractor, and the grievance covers the entire period, and thus was timely filed. In other words, the arbitrators had disputed factual issues submitted to them; those issues were straightforward, the evidence conflicted, and they ruled in favor of the Union and against D.E.I.

Without question, the arbitrators would have been well-advised to have made their findings express by stating, "We find by a preponderance of the evidence that, with regard to carpentry work performed on the Van Wert project, D.E.I. acted as a general contractor, rather than as a construction manager; and we find, further, that the grievance was timely filed." But the absence of such specificity does not require this court either to vacate the

award or remand this case to have the arbitrators insert that sentence, or one like it, into their report. To do so would exalt form over substance, and serve no useful purpose.

■ Although though the panel's factual findings that D.E.I. functioned as a general a contractor, at least with regard to subcontracting, and the coverage of the grievance may not be clearly visible, they are the necessary foundation for the results reached by the arbitrators. The findings are "rationally inferable from the facts before the arbitrator[s]." *Ganey v. Raffone*, 91 F.3d 143, 1996 WL 382278, *2 (6th Cir.1996) (Unpublished Disposition) (*citing Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir.1993)). In any event, were there any ambiguities in the award, such ambiguities would be interpreted in favor of the prevailing party. *Six Flags Over Texas, Inc. v. International Broth. of Elec. Workers, Local No. 116*, 143 F.3d 213, 215 (5th Cir.1998) (*citing Valentine Sugars, supra*, 981 F.2d at 213).

In light of those findings and the support they have in the evidence before the panel, there is no merit to D.E.I.'s contentions: the arbitrators' decision does not conflict with the collective bargaining agreement or reflect the arbitrators' own brand of industrial justice. There is no need to remand for further explication by the arbitrators of the decision.

■ I likewise agree with the Union that there is no merit to D.E.I.'s demand that the arbitrators' award needs further clarification with regard to the period over which back pay damages are to be assessed. The proper measure of damages, in light of the arbitrator's findings, is all the wages and benefits that would been earned had union labor, as provided in the collective bargaining agreement, performed the carpentry work on the project. To that end, the award clearly states that

three contractors "will look at the document plans and specifications to determine what the carpenters' man hours on the Van Wert project are." (Doc. 13, Exh. B, at 2).

### Conclusion

For the foregoing reasons, I find no merit in D.E.I.'s challenge to the arbitrators' award. It is, accordingly,

ORDERED THAT

1. The motions of the defendant Union for summary judgment as to plaintiff's complaint and for summary judgment as to the counter-claim be, and the same hereby are granted; the motion of the plaintiff for summary judgment be, and hereby is denied; and

2. The plaintiff D.E.I. shall forthwith proceed to take all steps reasonably necessary to comply with the arbitrators' decision.

So ordered.