**COURTAD CONSTRUCTION SYSTEMS, INC.**
**Plaintiff**

v.

**LOCAL UNION NO. 33,**
**etc. Defendant**

**No. 1:03CV82.**

United States District Court,
N.D. Ohio,
Eastern Division.

Feb. 18, 2004.

David S. Farkas, Alan G. Ross, Ross, Brittain & Schonberg, Cleveland, OH, for Plaintiff.

Michael P. Pazzo, Allotta & Farley, William H. Webster, Allotta, Farley & Widman, Toledo, OH, for Defendant.

## MEMORANDUM AND ORDER

STREEPY, United States Magistrate Judge.

Courtad Construction Systems, Inc. (Courtad) has filed a complaint to vacate an arbitration award entered in favor of the defendant, Sheet Metal Workers International Association, Local Union No. 33 of Northern Ohio (Local 33). This suit is brought pursuant to section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, and the Arbitration Act, 9 U.S.C. § 10. Local 33 has counterclaimed to enforce the award and has now filed a motion for summary judgment. (Doc. 33)

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky,* 490 F.2d 1273 (6th Cir.1974). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), holds that:

> ...Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

The Sixth Circuit in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street,* at 1479–80, sets forth ten "new era" principles:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

This standard is significantly altered for the case herein as noted in Section II, *infra.*

### I. The Evidence

The following evidence is relevant. The Collective Bargaining Agreement (CBA) at issue was not an agreement between Local 33 and Courtad only. Rather, it covered a four county region of all employers who engaged in the sheet metal, roofing, ventilating and air conditioning contracting divisions of the construction industry, including "each business establishment individually." Local 33 has jurisdiction over four Ohio counties, Ashtabula, Cuyahoga, Geauga and Lake. (Defendant's exhibit, DX, 1 at 1.) The CBA "covers the rates of pay and conditions of employment of all employees of [Courtad] engaged in" the above divisions of the construction industry in the four county region. (*Id.* at Article I, Section 1.) Additional portions of the CBA will be noted in the conclusions of law section when relevant.

Andy Farmer, a business representative of Local 33, alleged in a grievance, dated November 4, 2002, that between February of 2001 through November 4, 2002, he saw or learned that three individuals, Ross Stockler (Stockler), Johnny Huisman (Huisman), and Tim Courtad, worked for Courtad without becoming members of Local 33. (Defendants' exhibit, DX, 2.) The CBA sets out the grievance procedures in Article X. (DX 1 at 18–21.)

Inferentially, the first step of the grievance procedure was followed, but the grievance was not settled. Thus, the grievance was appealed by Local 33 to the Local Joint Appeals Board (LJAB) on November 14, 2002. (Plaintiff's exhibit, PX, A.) The LJAB found in favor of Local 33. (DX 3)

Shortly thereafter, on November 25, 2002, Charles Bowman (Bowman), another business agent for Local 33, saw Huisman, Stockler, Tim Courtad, and Tom Courtad working on a different Courtad job site. Bowman asked if they were union members, and they stated they were not. They did not respond to his question as to how much money they were making. Bowman told them to sign up as union members. (DX 5, attachment A.)

Bowman immediately tried to contact Dennis Courtad pursuant to Article X, Section 1 of the CBA "to raise this grievance with him." They eventually met on or about December 16, 2002. Thereafter, between December 16, 2002 and January 17, 2003, Bowman wrote letters and engaged in telephone conversations with Dennis Courtad or his attorney concerning the grievance issues. (*Id.*) The grievance was not settled during these conversations.

On February 13, 2003, a grievance appeal was filed by Local 33 regarding the November 25, 2002 observations of Bowman. (DX 5) The appeal was signed by Bowman as business representative of Local 33. He alleged "misconduct under Article X [of the CBA] and other provision[s] which apply." (*Id.* at 1.) He also alleged the "basis" for the grievance was that Courtad employees "do not receive the proper wages and the proper union dues are not deducted from their paycheck by the employer [Courtad]." He did not seek an order that the employees be required to join Local 33. (*Id.* at attachment A.)

On March 17, 2003, the LJAB vacated its first decision, dated November 14, 2002. Its order was "without prejudice or precedent, permitting the grievant to pursue its claims through another grievance." (DX 4)

The LJAB hearing was held on the second grievance on March 25, 2003. Counsel for Courtad argued that the grievance was untimely filed because it did not satisfy the 30 day time limit of Article X of the CBA. (DX 6 at 12–15.) In his opening statement, counsel also noted, "I think that the panel [of the LJAB] that is here today is the same panel that heard the original grievance by Mr. Farmer" (*id.* 6 at 12) and later noted, "in fact, we even have on the Panel [at the second hearing] the business agent who filed the original grievance." (T. 14) Courtad's witness, Dennis Courtad, was asked whether he had any prior discussions with a panel member, but the LJAB limited further questioning which prompted counsel to proffer that if Dennis Courtad was permitted to testify, he "would testify that Mr. Wos [an LJAB panel member] questioned him about all the things that we are discussing here today at the [first] grievance hearing and that he, obviously, brings that knowledge into this grievance." (T. 42)

Bowman testified as follows. The grievance he filed dealt with work at a different site than in the first grievance, and his grievance had no relevance to the first grievance that had been filed by Andy Farmer. (*Id.* at 23.) His various discussions with Dennis Courtad and Courtad's attorney following his initial contact with Dennis Courtad on December 16, 2002, were part of the first step of the CBA grievance procedure under Section 1 of Article X. (*Id.* at 25–27)

Dennis Courtad testified that Courtad had been a party to the CBA for about 20 years. (DX 6 at 31.) He also had a verbal side agreement for many of those years

with two Local 33 business managers regarding "mini-storage work" (*id.* at 32–33), which was most recently confirmed in 2002. (T. 34–35) Essentially, the side agreement permitted Courtad to hire employees who did CBA covered work for six months to a year without giving them the benefits called for by the CBA. (*Id.* at 35–37.) Stockler was one of those employees. (*Id.* at 37–39.) During the period covered by Bowman's grievance, none of the non-union employees had finished their trial period pursuant to the side agreement which meant that none of them were paid what the CBA required. (*Id.* at 42–43.) The side agreement was never put into writing. (*Id.* at 43.)

The LJAB released its decision in April of 2003. (DX 7) It held the "grievance is properly before the Board for a determination." (*Id.* at 1.) The first issue was whether Courtad violated Article V of the CBA by employing individuals who performed bargaining unit work but who are not members of Local 33. Bowman had presented "convincing evidence." Reference was made to the claim of Dennis Courtad that he had a verbal agreement with Local 33 that extended a probationary period for apprentices to six months, but the LJAB did not credit this testimony. The LJAB concluded Courtad violated Article V of the CBA. (*Id.* at 2.)

In addition, the LJAB "determine[d] that all hours worked by all Courtad employees in the field were in the performance of bargaining unit work." Courtad was ordered to submit the relevant reports indicating the hours worked by each employee to determine, *inter alia*, the "difference in wages Courtad owes on behalf of each employee." (*Id.* at 3.) The LJAB did not order Courtad to require that its non-union employees become union members.

## II. Conclusions of Law

Courtad raises five issues ranging from procedural to substantive in nature. It is first necessary to note the standard of review.

 The summary judgment standard to be applied herein is substantially altered by the fact the parties agree the LJAB decision at issue constitutes an arbitration decision. This requires that the court "afford substantial deference to the arbitrator's decision. The court, in fact, is not permitted to overrule an arbitrator's decision even where that decision contains factual errors." There are two exceptions to this rule. First, the arbitrator must interpret and apply the CBA, and while he may construe an ambiguous passage, the arbitrator cannot disregard or modify plain and unambiguous passages. Second, while an error in determining a fact cannot generally be overturned, the court may do so if examination of the record shows there is no support whatever for the arbitrator's decision. *Bruno v. United Steelworkers of America*, 784 F.Supp. 1286, 1297–98 (N.D.Ohio 1992), *aff'd* 983 F.2d 1065 (6th Cir.1993). Procedural questions are exclusively for the arbitrator to decide and cannot be overturned unless the arbitrator erred and the error was either in bad faith or was so gross as to amount to affirmative misconduct. *Id.* at 1299. The appellate court in *Bruno* noted the arbitrator's award must be enforced "so long as the award draws its essence from the collective bargaining agreement, even if the court disagrees with the arbitrator's interpretation of the contract." *Bruno v. United Steelworkers of Am.*, 983 F.2d 1065, 1993 WL 2300, at *4 (6th Cir.1993) (TABLE, text in WESTLAW). The appellate court also quoted from *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court should not reverse."

### A. Due Process

Courtad contends the LJAB violated procedural due process when it vacated its first decision. Courtad achieved a partial victory when the decision was vacated. Even assuming the victory was temporary, Courtad has not demonstrated it violated due process.

 Courtad also contends he was not given adequate notice of the second grievance hearing. However, counsel, as well as a Courtad witness, appeared at the hearing on the second grievance. No claim was made at the hearing that notification was improper.

In summary, Courtad has failed to establish a genuine issue that its due process rights were violated.

### B. Timeliness

It is rationally inferable that the LJAB found the grievance was timely filed when it held the grievance "was properly before the Board." *See D.E.I., Inc. v. Ohio and Vicinity Regional*, 296 F.Supp.2d 881, 885 (N.D.Ohio 2003). Courtad argues the 30 day provisions in Article X of the CBA were violated because Bowman observed the alleged illegal employment as of November 25, 2002, but did not file his grievance until February 13, 2003.

 Article X, Section 1 states that in order to be "valid, grievances must be raised within thirty (30) calendar days following the occurrence giving rise to the grievance." (DX 1) The CBA does not require the grievance be written. The evidence that Bowman began to discuss the grievance issues on December 16, 2002 with Courtad, approximately 21 days after the observations were made by Bowman, means Local 33 met the 30 day requirement of Section 1.

Article X, Section 2, provides that the grievance "may be appealed by either party to the LJAB." Notice of the appeal to the LJAB "shall be given within thirty (30) calendar days after termination of the procedures prescribed in Section 1 of this Article, unless the time is extended by a mutual agreement of the parties." (DX 1) Bowman testified he had ongoing discussions with Courtad about the grievance up to January 17, 2003. Since the appeal was filed on February 13, 2003, 27 days later, the 30 day provision of Section 2 was met.

In summary, Courtad has failed to establish a genuine issue that the second grievance was raised in an untimely fashion.

■ Under its timeliness argument, Courtad also raises the issue that four management representatives and three union representatives rendered the decision on the second grievance. Courtad claims this violated the requirement in Article X, Section 2 of the CBA that the LJAB consist of an "equal number" of representatives from each side.

Section 2 states the LJAB "shall consist of an equal number of representatives" from labor and from management "and both sides shall cast an equal number of votes at each meeting." The CBA does not mandate a specific number of representatives from each side.

All seven members of the LJAB panel at issue voted unanimously against Courtad. The equal number requirement is satisfied if one of the votes from the management side is not counted. Since the vote was unanimous, the outcome is not affected by deleting a vote from the management side. Courtad has not established a violation. Alternatively, if there was a violation, it did not affect the fairness or correctness of the decision.

Courtad has failed to establish a genuine issue.

## C. Partiality

Courtad contends there was an "inherent partiality" in the LJAB panel, thus it should have recused itself. Local 33 contends Courtad failed to object to the alleged partiality of the LJAB board members, thus waived same.

■ An arbitration decision may be vacated if the arbitrators had a "demonstrated bias." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990). Courtad must show a reasonable person would have to conclude that an arbitrator was partial to the other party during the arbitration. *Id.*

■ However, the issue may not be raised in federal court unless Courtad objected to an arbitrator's partiality at the arbitration hearing. The waiver does not apply unless all the facts currently being argued as to the alleged bias were known at the time the arbitration board heard the grievances. *Id.* at 1358–59.

Courtad relies upon the previously noted comments of counsel at the hearing to establish that it raised the issue. None of the cited transcript pages reflect Courtad specifically alleged partiality. The first two comments were in the context of counsel's argument that questioned the timeliness of the second grievance. The third comment was in the context of whether a prior conversation relating to the first grievance was relevant to the second grievance.

■ In summary, Courtad failed to object to the alleged partiality of the LJAB, thus waived its right to raise the issue in federal court.

## D. The Verbal Agreement

■ Courtad claims that the LJAB inappropriately failed to acknowledge the

previously described side agreement between Local 33 and Courtad. Courtad relies exclusively upon the aforementioned testimony of Dennis Courtad at the hearing.

The burden is on Courtad to show not only that a verbal agreement existed but that it was binding under the CBA. Courtad has failed in both respects.

Dennis Courtad testified his verbal agreement was only with two business managers of Local 33. There is no evidence the business managers had the authority to contractually bind Local 33 or that the other Local 33 officers, either individually or collectively on behalf of the union, knew of, much less approved of, the verbal agreement.

Concerning the binding effect, if a verbal argument existed, Courtad has not cited any language of the CBA that permits a verbal agreement between Local 33 and only one employer who is a signatory to the CBA. There is no provision in the CBA which specifically permits or specifically prohibits verbal agreements. However, the CBA does state that any employer "hereby waives any right it may have to repudiate this [CBA] during the term of this [CBA]." (DX 1, Article XII, Section 5.) The verbal agreement constitutes, at the least, a partial repudiation of the written CBA. The implications of permitting Courtad to enter into a verbal agreement with Local 33 are also relevant. If permitted, every other employer covered by the CBA could do the same thing which would render the CBA meaningless.

In summary, Courtad has failed to establish a genuine issue that a verbal agreement was entered into with Local 33 and has failed, assuming there was an otherwise valid verbal agreement with Local 33, that it was permitted by the CBA.

### E. Federal Law

Courtad contends the arbitration award should be vacated because it operates in "manifest disregard" of federal law. Courtad relies on *NLRB v. General Motors*, 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963), for the proposition that "a Union violates...the National Labor Relations Act (NLRA) if it seeks the discharge of employees who resign from the Union but continue to pay dues, because...the NLRA does not permit a Union to compel membership." (Plaintiffs' brief at 14.)

The LJAB did not order the discharge of employees who failed to join Local 33 and did not order they be compelled to join Local 33. While the LJAB framed the issue as whether Courtad's employment of individuals who are not members of Local 33 violates Article V of the CBA,[1] it made other findings that are not claimed to violate the NLRA.

Thus, the LJAB also found the work of the Courtad employees at issue, whether or not they were union members, was work covered by the CBA, thus the wages and other benefits called for by the CBA had to be paid. This portion of the decision is consistent with Bowman's grievance which alleges in part that the "basis" of the grievance was that the employees of Courtad "do not receive the proper wages." It is also consistent with the testimony of Dennis Courtad that reflected he was well aware the grievance included the allegation Courtad failed to pay certain Courtad employees the wages required by the CBA.

---

1. Article V states Courtad "agrees to require membership in the Union as a condition of continued employment of all employees performing any of the work specified in Article I of this [CBA] within eight (8) days following the beginning of such employment." (DX 1 at Article V, Section 1.) The provisions of Article V do not apply in any state where they are contrary to law. (*Id.* at Section 3.)

In summary, Courtad's claim that federal law was violated is not well taken.

### F. Attorney Fees

Courtad also seeks attorney fees. The CBA at Article X, Section 6, states that following the decision of the LJAB, a

> local party may enforce the award by any means, including proceedings in a court of competent jurisdiction in accordance with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts.

The CBA at issue is quite specific in mandating attorney's fees. Such fees were awarded in another case based on the identical CBA language. *See Local Union No. 38 v. Hollywood Heating & Cooling*, 88 F.Supp.2d 246, 257 (S.D.N.Y.2000), *affirmed*, 1 Fed.Appx. 30, 2001 WL 15612 (2d Cir.2001). Accordingly, attorney fees shall be ordered.

### Summary

Courtad has not established a genuine issue of material fact under the standard for reviewing an arbitration decision, thus the motion of Local 33 for summary judgment is granted. However, judgment shall not be entered until the amount of attorney's fees is determined. Local 33 shall file its brief as to fees by March 3, 2004, and Courtad shall respond by March 17, 2004.

IT IS SO ORDERED.